IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TIMOTHY CASHION, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-22-346 |
| | * | |
| SYNCHRONY FINANCIAL, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Timothy Cashion ("Cashion") filed an amended complaint in the Circuit Court of Maryland for Baltimore City, asserting claims under the Fair Credit Reporting Act ("FCRA"). ECF 2. Defendant Synchrony Financial ("Synchrony")[1] has filed a motion to dismiss Plaintiff's Amended Complaint, ECF 6, and Plaintiff has failed to oppose the motion. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated herein, the motion to dismiss the Amended Complaint will be granted.

## I.   FACTUAL BACKGROUND

The following facts are derived from the Amended Complaint and are assumed to be true for purposes of this motion. ECF 2. After locating a house he wished to purchase, Cashion consulted with a mortgage broker to get preapproved for a mortgage loan. *Id.* ¶ 5. His credit score would have been sufficient to qualify for a loan. *Id.* ¶ 6. However, on January 11, 2020, the mortgage broker informed Cashion that his credit report erroneously listed him as "deceased." *Id.*

---

[1] Synchrony asserts that it was improperly named in the Amended Complaint and should have been named as Synchrony Bank. ECF 6-1.

¶ 7.  The mortgage company, Fire Brokers, told Cashion that they could not process his mortgage. *Id.* ¶ 9.

Cashion contacted Synchrony on numerous occasions to clarify that he was not deceased.[2] *Id.* ¶ 10.  Synchrony investigated and "reported back to the Senator that there was, in fact, an error in their system."[3] *Id.* ¶ 11.  Synchrony told Cashion that they had flagged the error with Equifax and other credit reporting agencies. *Id.* ¶ 12.  However, after more than 30 days, the "Credit Reporting Agency"[4] continued to report Cashion as "deceased." *Id.* ¶ 13.  Cashion was unable to purchase the home he wanted and suffered resulting emotional distress. *Id.* ¶¶ 14-17.  Additionally, "even though he was current on the payments, Synchrony closed his lines of credit and, to date, has refused to reopen them." *Id.* ¶ 17.  This lawsuit ensued.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  That rule provides that a complaint must

---

[2] The Amended Complaint, which is not a model of clarity, does not specify how Synchrony was involved in Cashion's proposed transaction.

[3] Again, the Amended Complaint does not state who "the Senator" is or why "the Senator" played a role in the situation.

[4] The Amended Complaint does not specify which of several Credit Reporting Agencies this is.

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ....") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.    ANALYSIS

Cashion's allegations fail to state a claim to relief that is plausible on its face, because they frankly fail to tell a coherent story about what Cashion alleges. Without knowing Synchrony's alleged role in the transaction, this Court is unable to decipher whether Cashion can state a valid FCRA claim or not. Moreover, the four counts in the Amended Complaint incorporate captions with no logical reference to particular legal provisions, making it difficult for this Court to ascertain which causes of action Cashion means to assert. This Court does not read Cashion's Amended Complaint to assert any common law claims, but to the extent it intends to do so, any such claims are not well-pled and will be dismissed.

Regardless, as Synchrony argues, Count I of Plaintiff's Amended Complaint asserts that Synchrony failed to implement reasonable policies and procedures to ensure the accuracy of its reporting to CRAs. Plaintiff does not cite any legal basis for this Court to find a private right of action for that type of violation. In fact, the FCRA "expressly bars private suits for violations" of a general duty to provide accurate information, and limits private rights of action to specific violations of § 1681s-2(b). *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 149 (4th

Cir. 2008) ("FCRA explicitly bars private suits for violations of § 1681s-2(a)[.]"). Thus, Count I must be dismissed.

And to the extent Counts II, III, and IV intend to allege violations of § 1681s-2(b), Cashion has not adequately stated those claims because he fails to allege that any credit reporting agency informed Synchrony, the furnisher of the information, that Cashion disputed his "deceased" status. *See Mavilla v. Absolute Collection Serv.*, 539 F. App'x 202, 208 (4th Cir. 2013) ("a furnisher's duty to investigate is not triggered until it receives notification of a dispute from a credit reporting agency. . . . This means that a furnisher of credit information . . . has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency.") (quotation omitted). Based upon the admittedly unclear allegations in Cashion's Amended Complaint, it was Synchrony, the furnisher, who took the lead on advising the consumer reporting agencies that Cashion remained alive once Cashion informed Synchrony of his continued existence. Thus, the necessary elements of a claim under § 1681s-2(b) are not met, as the Amended Complaint is currently pled. *See Green v. Rosenberg & Assoc., LLC*, No. PJM-17-732, 2018 WL 1183655, at *5 (D. Md. Mar. 7, 2018) ("To state a claim under section 1681s-2(b), a plaintiff must allege, *inter alia,* that after he or she notified the consumer reporting agency of a dispute, the agency notified the defendant furnisher of information of the dispute, after which the defendant failed to adequately investigate; notice by a consumer directly to the furnisher of the information does not trigger the furnisher's duties under section 1681s-2(b).") (quoting *Craighead v. Nissan Motor Acceptance Corp.*, No. 1:10cv981 (JCC/JFA), 2010 WL 5178831, at *4 (E.D. Va. Dec. 14, 2010), *aff'd*, 425 F. App'x 197 (4th Cir. 2011)). Cashion's Amended Complaint will therefore be dismissed.

This Court notes with disapproval the fact that this case was filed by a prominent local law firm which, in this matter, has not adhered to the standards this Court expects of members of its

5

bar.  Because counsel failed to respond, in any manner, to Synchrony's motion to dismiss, this Court was left to analyze a largely inscrutable Amended Complaint that Cashion may no longer even intend to pursue.  In future cases, counsel should be forewarned that some timely response should be filed to a motion to dismiss, even if the response simply notifies the Court that plaintiff no longer intends to press the claims.

## IV. CONCLUSION

For the foregoing reasons, Synchrony's unopposed Motion to Dismiss, ECF 6, will be GRANTED and the Amended Complaint will be dismissed without prejudice.  If no motion seeking leave to file a Second Amended Complaint is filed within fourteen days of this memorandum and order, the dismissal will convert to dismissal with prejudice and the case will be closed.

Dated: March 8, 2022                              /s/
                                      Stephanie A. Gallagher
                                      United States District Judge